Mr. David, did you have a motion? Yes. If it pleases the court, I had previously yesterday filed a motion to add counsel for oral argument by partner Lou Rhodes. Lewis has, Wolf Creek has been his long-time client. He was instrumental in the claim. He was instrumental in the proceeding. He's not a member of the bar? Correct. He's not a member of the bar. And he is a member of the Virginia Bar, the Court of Federal Claims Bar down the hall, Eastern District. And I think if he was to make the argument today, he would be able to answer your questions much more. Okay, so you're moving to have him admitted Pro Act VJ to make the argument? Yes, sir. Yes, please. And my understanding... The motion's granted. It's okay? Yeah. Thank you, sir. But in the future, you should get admitted to the bar. I stand properly scorned. Okay, Mr. Rhodes. Good morning, Your Honor, and I appreciate the flexibility. 20 years is my first appellate court appearance, so we'll see if we do it again. May it please the court. My name's Lewis Rhodes. I represent Wolf Creek Railroad. We're here asking the court to reverse the Court of Federal Claims' granting of the government's motion to dismiss both under 12b1 and 12b6. Our position is the court made multiple errors on both the subject matter jurisdiction as well as the substantive issue related to whether or not American Ordinance was acting as the Army's agent. First, addressing the subject matter jurisdiction and whether or not the claim was submitted properly under the Contract Disputes Act, our position is it is... My understanding is that there are presented, at least, and may be by the Court of Federal Claims, two subject matter issues. One is the submission of a claim, which may turn on what exactly submitted is. But independently, the privity requirement of the Contract Disputes Act is, at least in the government's view, and I think the Court of Federal Claims' view, also a matter of subject matter jurisdiction. I think that would kind of border between 12b1 and 12b6, Your Honor. Well, it might make a difference because on 12b1, the trial court actually does get to do fact-finding. 12b6, it does not. Yes, Your Honor. I don't... If we're going to... I think that's parsing into... The privity of contracts... Yes, the Court ruled on subject matter jurisdiction. Again, I would posit the Court was wrong on both counts. First, on the claim delivery, at some point in time, the Army has to be culpable for not properly maintaining its systems, not properly maintaining an email system, not rejecting emails that are sent to dead email boxes that are supposedly belonging to retired people. They sent me a return receipt, delivery receipt, that said your email was successfully delivered, and it's actually included in the record. The delivery receipt says, if there is an error, we will notify you. Never receive such a notification. I mean, it's pretty clear that the claim ended up into the Army's email server control. While neither this Court or the Court of Federal Claims has addressed this issue related to a claim submission, the Courts have been very clear on how it... in a very analogous proposal submission. And the case law is clear that if a proposal is submitted electronically, as the world works in the 2020s, once it hits the government server, it's under the government's control, it's delivered to the government. For the Army, that's to say that these people... But the statute doesn't say delivered to the government. It says submitted to a particular person, namely the contracting officer. Yes, Your Honor. Is there a, I don't know, a practice, a rule, contracts go on for extended periods in general. Contracting officers can be replaced. Is there some set of requirements or practices whereby one side or another or both notify each other when there's a change of this person who plays this incredibly important role, the contracting officer? Generally, there is, Your Honor. This is not a normal situation, which you hit on earlier with the privity of contract question. If a contracting officer is going to change, that's usually notified to the prime contractor. It doesn't always flow down to the subcontractors or anyone else affiliated. There's usually a pattern of a communication to... There's usually a modification or some other letter or communication to the contractor saying, hey, I'm your new contracting officer. That sounds like it might be a reason to be quite strict about finding that somebody other than one of the two counterparties to a particular contract turns out to be a contract party. Well, that's the second part of the equation, Your Honor, as we get to the issue about whether or not there's an agency theory to hold the government and the Army accountable here. Let's suppose that there is an agency theory, but how is it that the agent here supposedly had the authority to agree to a provision that would make the government liable in terms of a termination? The basic prime contractor or subcontractor relationship requires that there be authority to enter into such a provision, and it doesn't seem to me that the authority exists. Indeed, the agreement between the United States and what you call the purchasing agent says you can't do that. Well, the basic ordering agreement has ample provisions about how a termination would work. The basic ordering agreement... I'm not sure it says specifically. That was in the response to the request for use of facilities, Your Honor, where the guidance from the Army to American Ordinance was to, hey, when you put the tenant use agreement together, there's three different contracts here. There's the basic ordering agreement, which is between American Ordinance and the Army. I'm referring to the provision on 308, paragraph 10 here. This is a letter from the Department of the Army to Gibson at American Ordinance, and says specifically that such cancellation shall be at no cost to the government. It talks about the cancellation. So how does this supposed purchasing agent have authority to enter into a provision that creates government liability? Well, the purchasing agent then drafted the tenant use agreement. The tenant use agreement was approved by the Army, and the tenant use agreement does not have that language on there. So the contracting officer who said... The tenant use agreement also doesn't say the government is liable. Well, it cites the FAR Part 49, which is the entire termination for convenience clause. Why does citing to Part 49 suggest the government's liable? Because FAR Part 49 is the entire clause that covers how terminations for convenience work. It also deals with subcontractors. It includes lots of different things. Well, the specific... It says any termination would be subject to FAR Part 49. That clause in the tenant use agreement specifically references the termination provisions of FAR Part 49, Your Honor. So yes, why 49 covers other things, the language... So just the mere reference to Part 49 suggests that the government was supposed to be liable in the event of a termination? That's a standard practice in government contracting, Your Honor. If the government has an independent right as a sovereign to terminate contracts, they're the only party that has an unfettered right to terminate contracts for convenience. And when they terminate a contract for convenience, there's a statute that covers how that's supposed to work. So the government... We have a situation here where the Army... You're answering my question. How is it that the agreement's reference to Part 49 says the government will be liable in the event of a termination when the government told the prime contractor you can't make us liable? The government... Well, the clear fact, Your Honor, is American Ordnance is the one who created this mess and made an error. So the American Ordnance contracting officer was told to do something. He failed to do it. But when he failed to do it in the lease agreement, in the tenant use agreement, the Army then... The Army's contracting officer reviewed and approved the tenant use agreement without the language saying you're not holding the government liable. The tenant use agreement was approved by the very person who said, hey, put this clause in there. The clause is not in there. And then the Army contracting officer reviewed the tenant use agreement and approved it without that clause. I mean, there were errors on... There were multiple errors on the side of the government. And my client, our client, Wolf Creek Railroad, does not see behind the curtain what's going on here. They were... My client was told here's a 25-year lease. While they were negotiating the terms of the 25-year lease, the Army knew they were already in discussions to offload the mill app facility to the state of Tennessee. No one told my client that. The Army dictates the terms of the lease. The Army approves the lease. Then the Army directs American Ordinance to terminate the lease. And the Army wants to step back and put his hands up and say I had no role in any of this. American Ordinance did not exercise any independent decision-making in this whole process. They had to get the Army's approval every step of the way. And the Army was the one who dictated the termination. It wasn't American Ordinance. It was the Army who sent a letter and said, hey, you need to terminate this. Does the record show that the government approved the tenant use agreement? Excuse me, Your Honor? Where does the record show that the government approved the tenant use agreement? I don't know off the top of my head. I have to go back and check through my briefs. I know we cited in our brief and in the complaint because the Army, after the tenant use agreement was drafted, was sent to the contracting officer for approval. And then it was sent back to... Then it was submitted to Wolf Creek for review and signature. Your rebuttal time, do you want to save it? Yes, Your Honor. Mr. Griffin? May it please the Court. Sean Griffin for the United States. I'm happy to begin with questions or I can explain the government's position with respect to the certified claim issue and the privity of contract issue. The court of federal claims decision should be affirmed because it correctly decided that Wolf Creek failed to establish that it submitted a certified claim to the contracting officer as required by the Contract Disputes Act. And as an independent basis requiring dismissal, the court correctly decided that Wolf Creek Railroad could not establish privity of contract between it and the government. Can I ask if what it has done to date does not constitute submission of a claim, there's still time for it to submit one, right? It's less than six years? I believe so, Your Honor. I don't believe the statute of limitations would have run. And candidly, while the case was pending before the court of federal claims, Wolf Creek did submit a new certified claim to the contracting officer. That claim is void because the contracting officer is divested of authority to decide the claim while it's in litigation. Presumably, once the case... So on this particular issue, submitting the claim does not sound like the claim is delivered. Well, the Contract Disputes Act says that the contractor shall submit the claim to the contracting officer. The court has held that the receipt is what triggers the contracting officer's duty to act. Right, and on interest also. And that's perfectly natural. Obviously, you don't charge the government with a duty until the government actually knows. But that doesn't seem to imply that submitting to a person, that submitting is the same thing as receipt by the relevant person. No, there is a distinction in the language, but the application through cases of this court do put emphasis on the contracting officer's receipt. For those purposes, for purposes of essentially charging the recipient with action or payment of money, basically. Correct. Though, in this case, Wolf Creek Railroad did not submit the claim to the contracting officer. It submitted its claim to somebody who it believed to have been the contracting officer but who had been retired for almost three years, was no longer working for the federal government. Then it tried to submit its claim again to a different person within the Army who was not the contracting officer. It apparently erred in its email submission so that the email was not delivered to that person's email address had they properly... Is that the one, it erred because it used the email address that you gave it and that was wrong? There was a missing period. They didn't make that up though. I think they got it from you, is that wrong? I don't recall, though there is another problem in that Mr. DeAnda, who was the second intended recipient, who had been the contracting officer at least a year prior to their submission, the Army underwent a system-wide email migration effort so even that email wasn't current. This problem presents itself because Wolf Creek Railroad was a subcontractor and was not in normal correspondence with the contracting officer like a prime contractor would be. The claim certification process was hampered because of Wolf Creek Railroad's position as a tenant or a subcontractor under the facility contractor American Ordinance. There are several layers of complications but in any event, the parties don't dispute that the claim was never submitted to the cognizant contracting officer and there are affidavits that the court considered from the respective contracting officers saying that they never received the claim. Now, had the claim ultimately arrived at the cognizant contracting officer's email box or in his office, that could have presented a different story. This court has held that where a contracting officer's representative, for example, actually forwards the claim to the contracting officer, then the submission of the certified claim is valid. It's not so particular that they had to get the email right and make it there, but it does need to make it there. The reason for that is fairly obvious. If the contracting officer does not receive the claim, the Army or any agency would not know that it has to respond to these before the statutes that require the Army's response in the deemed denial or in an actual contracting officer's final decision. Those provisions wouldn't be triggered and so any agency could be hauled into court without the opportunity to respond to a certified claim. Can we talk about the merits here? If you look at this tenant use agreement on 312, the American ordinance is described as the owner's representative and the owner is the Army. So it sounds as though they're entering at least you could construe this as they're entering into this agreement on behalf of the Army. So, the problem that I see is even if you accept that, they were not supposed to enter into an agreement which made the government liable on termination. And they're cutting it over that by saying, oh well, the government approved the agreement. Is that true that the government approved the tenant use agreement? No, and I wanted to get to that, Your Honor. I don't have anything in the record establishing that the Army approved the tenant use agreement itself. There was the authority to enter into the tenant use agreements. But my understanding and view of the record is that there's nothing that shows that the Army reviewed the tenant use agreements individually. Those were contract agreements between AO and its tenants. So to the extent that there was a factual finding or factual proceeding, as there can be under 12b-1, was that a point that you disputed? I don't recall that being a point. First of all, does the complaint say the Army approved this? I would have to go back and specifically look at the complaint. The way that the court considered the issue was to go through the agency theory test under Johnson Controls and evaluated the merits via the law of this court looking through each element of the test. And found that even if Wolf Creek had made some allegations outside of that, the Johnson Controls test requires clear contractual consent. So it's dispositive to look at the contract between the government and the prime contractor and separately the prime contractor and the subcontractor to determine whether there is an agency relationship. Here there's nothing in those contracts that would establish one under the test announced in Johnson Controls. If there are no other questions on that, I'll turn finally to Wolf Creek's final point, which is to request the Johnson Controls and the agency theory test be expanded. Tellingly, Wolf Creek requested the Johnson Controls test be expanded because apparently it does not believe that the test announced under Johnson Controls would allow it to prevail. But Johnson Controls established an intentionally narrow test because the court recognized that waivers of sovereign immunity are to be strictly construed. That's not always true, is it? That waivers of sovereign immunity are strictly construed. I'm thinking, for example, the Supreme Court's Richland case, which seems to treat that idea as a kind of tiebreaker after all other interpretive tools are used and you still can't decide it. I know that we've said that a lot and the Supreme Court has doubtless said it as well. It's not clear to me that that how strong an idea that is anymore. Well, it's not just Johnson Controls, Your Honor. I can go through the many cases within the courts and we do so in our briefs I believe at page 30 and 31 going through the court's construction of the claim as a jurisdictional requirement and that being one way to enter the court. Should the court expand that test of a claim or of privity? Which are we? Using the jurisdictional bar to highlight the government's position here. With respect to privity, the government only was dealing with AO. It had no contractual relationship with Wolf Creek Railroad and so to expand a subcontractor's ability to bring direct claims would dramatically expand the government's exposure, especially where here the government took pains to create a buffer with a prime contractor. Do I remember right that in your brief you maybe have a footnote that says, we don't really think that this whole subcontractor characterization is right, but the other side uses it so we will too and therefore invoke the very strict standard for subcontractors. What if in fact this is not really a subcontractor relationship at all? We apply that because it would actually be a less strict standard, I would expect because the subcontractor nature means that the government is getting something that the subcontractor is providing furthering the project that the prime contractor is providing. Here AO is the facility contractor and Wolf Creek is simply a tenant. There is even less of a relationship between the services that Wolf Creek is providing to AO than what a normal subcontractor would be to the government. That would be charitable though obviously the subcontractor relationship is the closest one that applies for the purposes of the legal framework that would foreclose their ability to recover against the government. Finally I want to turn to a point that my friend raised about AO being the party that made a mess of these things and creating the circumstances as to why we are here. Normally subcontractors can pursue claims against the government via pass-through claims. Those typically require that the government is liable to the prime contractor. Here the agreement that Wolf Creek entered into disclaims any liability for the prime contractor therefore there appears to be no avenue to recovery because of the agreement that Wolf Creek entered. When you say liability for the prime contractor you mean the army? No to AO. The tenant use agreement... I guess to try to describe what they're arguing they say the tenant use agreement says that AO is acting as the army's representative and they say that it says that in the event of a termination that AO is not liable but it doesn't say the government is not liable and they infer that the government is liable by the incorporation of Part 49 in the agreement. So what's your response to that? Two responses Your Honor. First is that AO does not generally have the authority to bind the government to more expansive things than the government agents who have actual authority can. AO did not have the authority to hold itself out as the agent regardless of what any tenants were led to believe by AO. There's no authority on a prime contractor to obligate the government. The second answer to your question turns back to the Johnson Controls Test which does establish a limited way where a subcontractor can establish an agency theory. Here Wolf Creek can't establish any of the elements of the Johnson Controls Test. The prime contractor was not acting as a purchasing agent for the government. The agency relationship between the government and the prime contractor was not established by clear contractual consent and the contract did not state that the government would be directly liable to the vendor for a purchase price. None of the elements of the contract What's the purpose of including Part 49 in the agreement between AO and Wolf Creek? That is a provision between two private parties and I hesitate to speculate on what AO's intention or what Wolf Creek's intention was in the tenant use agreement. The court correctly concluded that Part 49 didn't create any government obligation or agency relationship in any event. The court was correct on that point and there's nothing within 49 that requires the government to be liable for termination. 49 doesn't talk about pass-through claims, right? I don't believe so, no. You don't think so? I think it does, but I think it talks about subcontractor claims in the event of a termination. I'm not saying that what I'm suggesting to you is that maybe the inclusion of Part 49 is for that purpose because it's dealing with subcontractor claims in the event of a termination. I understand. Yes. I only mean to say I don't think Part 49 provides the kind of relief that Wolf Creek intends to suggest that there creates an agency relationship or that they can attempt a pass-through claim when they haven't done so and that's not the posture of the case. They attempted to file claims with the government directly and so there is a heavy uphill burden for Wolf Creek. The Court of Federal Claims ruled on both 12b1 and 12b6 on both the privity of contract and claim certification issues ruling that the court did not have jurisdiction over those claims and that Wolf Creek had failed to stay a claim. I think we're out of time. Thank you. Gentlemen, there was one significant error that the court made under its analysis under Johnson Controls and it said that the AO was not procuring any services for the Army and that's completely wrong. Because when you go and read the Base Ordering Agreement or you read the Tenant Use Agreement, Wolf Creek Railroad was required to provide railhead services and locomotive repair services to the Army under the Tenant Use Agreement. So part of the Tenant Use Agreement was providing direct services in support of the Army. So the AO was hiring Wolf Creek Railroad to work directly on the Army's locomotives through the Tenant Use Agreement. It was not a monetary remuneration, but part of the authority for Wolf Creek to enter into the TUA was that it had to provide certain services directly in support of the Army for the Army. That didn't go through American Ordinance. This was not like a prime-sub relationship where Wolf Creek was working underneath the direction of American Ordinance. It was providing these services directly to the Army. It's in the agreements. So it's demonstrably incorrect to say that American Ordinance was not purchasing anything on behalf of the Army. They did directly. So I believe Johnson Controls applies, and I believe it applies because AO was absolutely buying services for the Army that Wolf Creek was providing directly to the Army. To the extent that I'm asking the Court to expand Johnson Controls, Johnson Controls is a 40-some-year-old case. The way government contracting works in 2025 is substantially different than the way government contracting worked in 1982. The growth of the government-controlled contractor, the GOCOs as they're called, which is referenced 20-some times in the Basin Order of Agreement, has exploded in the last four years. I cite the numbers from different agencies in our briefs. There's some 40 or 50 relationships out there, just like this relationship at Milan where the government is hiring someone else to run its facility, which is outside of a procuring agency like in the Johnson Controls case. But to borrow from the old adage, if it looks like an agent, acts like an agent, and smells like an agent, it's an agent. If everyone takes a step back and says AO was running the facility for the Army, AO was purchasing services for the Army, AO was acting at the Army's direction, AO had no independent approval on this whole process. That's the very definition of being someone's agent when they're telling you what to do. Remind me, the relationship between the Army and AO, which way did money flow? Your Honor, I'm not even sure. I didn't see the basic ordering agreement until it was attached to the motion to dismiss. I don't know if the Army was paying AO to run the facility, or if much like AO was then receiving money from other people and managing the facility. I think it might have been a combination of both. I'm not that greatly versed on the basic ordering agreement. The issue on the service to the claim, the Army's position is we're going to hide the ball and not give you the information you need, and when you can't get the document to the right person, that's your fault. I had letters with contracting officers' names signed by contracting officers with their emails. I've sent it to both gentlemen. I've sent it via email twice, and if I had a bad email address, why did I get a successful delivery receipt from the Army's server? Not only did I get a successful delivery receipt from the Army's server, the delivery... It was to which email? That was the second one to Mr. Deonda. Didn't the second one occur after the filing of the suit? No, that was the third. That was sent via FedEx, Your Honor, and that's the other point. This case was filed with a complaint. The Army, or the government, asked for an extension to file its motion. It filed its initial motion, and it argued that the claim wasn't certified. There was no mention in the Army's original motion to dismiss about the lack of service. Then, when I filed my opposition to their motion and pointed out that, yes, the claim was certified, I just failed to attach it with the complaint, then in the reply brief for the first time, six months after this case started, we get the, oh, you didn't successfully deliver the case. I think we're out of time. Thank you. Thank you, Your Honor. The case is submitted.